UNITED STATES DISTRICT COURT                    C/M
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                :
NAKEISHA FREDERICK,                             :
                                                :     **<u>MEMORANDUM</u>**
                              Plaintiff,        :     **<u>DECISION AND ORDER</u>**
                                                :
              - against -                        :     12 Civ. 2387  (BMC)
                                                :
UNITED BROTHERHOOD OF                           :
CARPENTERS and JOINERS OF AMERICA               :
(UBCJA) LOCAL 926, *et al.*,                     :
                                                :
                              Defendants.        :
-------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff *pro se* brought the instant action against defendant the United Brotherhood of

Carpenters and Joiners of America Local 926 ("Local 926"), alleging that defendant subjected

her to discriminatory treatment, failure to promote, termination, harassment and retaliation under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  Defendant has moved to

dismiss her Second Amended Complaint ("SAC") for failure to state a claim.[1]

      It is axiomatic that a *pro se* plaintiff's complaint must be considered in its most favorable

light, with all inferences drawn in plaintiff's favor.  See <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.

Ct. 2197 (2007); <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471 (2d Cir. 2006).  In

considering the sufficiency of plaintiff's allegations, I have taken into account the response that

plaintiff has submitted in opposition to defendant's motion to dismiss, to the extent that it is

consistent with her pleadings.  See, e.g., <u>Braxton v. Nichols</u>, No. 08 CIV. 08568, 2010 WL

1010001, at *1 (S.D.N.Y. Mar. 18, 2010).  Plaintiff's allegations are not a model of clarity, but

---

[1] The operative complaint in this action is what plaintiff has titled an Amended Complaint and docketed under that title on July 8, 2014.  Because an amended complaint also was filed on June 29, 2012, this Order will refer to the operative pleading as the Second Amended Complaint.  The individual defendants named in plaintiff's original pleadings have all been terminated from this case.

she does provide a narrative of events occurring over an approximately two-month period that are apparently, in her view, evidence of actionable discrimination on the part of Local 926. Plaintiff premises her entitlement to relief on a litany of objectionable conduct on the part of her supervisors there, most of which appears wholly unrelated to race. The bulk of plaintiff's allegations suggest at most a pattern of cronyism, which is not actionable under Title VII. However, plaintiff has alleged that for the first ten months of her employment, she was paid less than a similarly situated white employee was paid under the same circumstances a short time later. With respect to that narrow aspect of plaintiff's complaint, she has sufficiently alleged a *prima facie* case of actionable discrimination. Defendant's motion is therefore denied as to plaintiff's claim for unequal pay under Title VII, and is granted in all other respects.

## BACKGROUND

The following recitation of facts is drawn from plaintiff's SAC and from her brief in opposition to the instant motion. Plaintiff began her employment with Local 926 in early 2010, receiving a wage of $11 per hour. In November 2010, she was given a raise to $13 per hour. In February 2011, about 10 months into her employment, she was given a raise to $17 per hour. On or about July 5, 2011, she met with her supervisors Joseph Dinapoli and Salvatorre ("Sal") Tagliaferro. They offered her a promotion to replace an outgoing Office Manager, who was about to be terminated. The offer included a $22 hourly wage, and supervisory responsibility over a temporary worker. Plaintiff asserts that these terms compared unfavorably with those of former Office Managers, who were white and Latina. Plaintiff turned down the offer. Over the course of July 2011, Tagliaferro placed an ad for a new secretary and, soon thereafter, hired Maria Concillo. Plaintiff alleges that Concillo, who was white, received certain office privileges and pay earlier in her term of employment than plaintiff had. Specifically, she alleges that as of

Concillo's start date of July 27, 2011, Concillo received $17 per hour, "the exact same wage I worked 10 months for . . . ." Plaintiff does not allege that Concillo was given the position of Office Manager. On August 11, 2011, apparently with the intervention of a mediator, it was determined that plaintiff had been doing the job of Office Manager, and she was given the raise she had been offered in July.

Plaintiff's SAC sets forth at some length the reasons for her dissatisfaction with Concillo, including what she perceives to be numerous instances of favoritism. It alleges a belief that Concillo "worked with [Tagliaferro] to have me eliminated so that they could together run the local how they see fit." It also alleges that plaintiff "did not understand the extent of [Tagliaferro's] plan until [she] overheard him talking about black, white and Latino workers in the office," leading her to conclude that he "wanted the 'minority workers' gone."

At some point in August 2011, plaintiff began to suspect that Concillo had tampered with plaintiff's office computer system. Plaintiff contacted Local 926's third-party security vendor, who apparently reviewed videotapes and confirmed that there had been no breach of security in the office. On or about August 23, 2011, plaintiff was informed by Tagliaferro that she had been terminated by a vote of the Local 926 executive board. He cited insubordination and a breach of security as the reasons for her termination.

DISCUSSION

## I.  Discrimination

Discrimination claims under Title VII are governed by the familiar burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). To make out a *prima facie* case, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the adverse

employment action occurred under circumstances that give rise to an inference of discrimination. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). One circumstance that gives rise to an inference of discrimination is where "the employer treated plaintiff less favorably than a similarly situated employee outside h[er] protected group." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).

For purposes of a motion to dismiss, the Second Circuit does not require a Title VII plaintiff to allege facts sufficient to establish a *prima facie* case under McDonnell Douglas. See Brown v. Daikin Am. Inc., 756 F.3d 219 (2d Cir. 2014) (discussing Title VII pleading under Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)). However, "a plaintiff must allege facts that allow the court in substance to infer elements of a *prima facie* case." Mohawk v. William Floyd Sch. Dist., No. 13-CV-2518, 2014 WL 838162, *2 (E.D.N.Y. Mar. 3, 2014) (quotation omitted). The elements of the *prima facie* case "provide a helpful outline of what is necessary to render a plaintiff's claims for relief plausible." Friel v. Cnty. of Nassau, 947 F. Supp. 2d 239, 251 (E.D.N.Y. 2013) (quotation omitted).

Plaintiff's amended pleadings and her opposition to the instant motion set forth the many instances of perceived mistreatment that she suffered while in defendant's employ. To be actionable as discrimination under Title VII, however, such alleged mistreatment must not only be related to race, it must rise to the level of an adverse employment action. "Title VII is not a general bad acts statute." Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 135 (2d Cir. 1999) (quotation omitted). I therefore consider only those allegations which rise to the level of an adverse employment action.

*A.     Failure to Promote and Termination*

Plaintiff alleges that she was passed over for a promotion to Office Manager, and ultimately terminated, because of her race. Failure to promote is actionable under Title VII, and requires plaintiff to show that she "she applied and was qualified for a job for which the employer was seeking applicants; . . . was rejected for the position; and . . . the position remained open and the employer continued to seek applicants having plaintiff's qualifications." Hussey v. New York State Dep't of Law/Office of Atty. Gen., 933 F. Supp. 2d 399, 406 (E.D.N.Y. 2013) (citing Estate of Hamilton v. City of New York, 627 F.3d 50, 55 (2d Cir. 2010)). Critically, for purposes of this case, a plaintiff also must "allege some facts – not mere conclusions – plausibly suggesting that the decision to pass her over for the promotion . . . was made because of plaintiff's race." Id. at 407.

Here, plaintiff alleges no facts suggesting that she was denied a promotion to Office Manager for reasons relating to her race, or indeed that she was ever denied that promotion at all. First, her pleadings concede that she was offered the job of Office Manager and rejected it because she was unhappy with the details of the offer, and not the other way around. Moreover, plaintiff has alleged no facts that would suggest discriminatory animus. Her bare allegation that she heard her supervisor "talking about black, white and Latino workers" in connection with the termination of an outgoing Office Manager are insufficient. Moreover, plaintiff does not allege that a similarly situated co-worker outside of her protected class was given a promotion in her place. In fact, in plaintiff's account, it was not long before her employers concluded that she herself had *de facto* taken on the role of Office Manager, and increased her pay accordingly.

Likewise, plaintiff's allegations of discriminatory termination are insufficient. Plaintiff has not alleged that she was singled out for termination among a group of similarly situated co-

workers.  Moreover, in assessing the sufficiency of plaintiff's termination claim, I am "mindful that a factor to consider is whether more likely or alternative explanations for the alleged conduct exist."  Nunez v. Cuomo, No. 11-CV-3457, 2012 WL 3241260, at *13 (E.D.N.Y. Aug. 7, 2012) (citing Iqbal, 556 U.S. at 681).

Plaintiff's own allegations suggest that she was terminated in part due to unauthorized actions that she undertook relating to the use of a security vendor, and in part due to insubordination; at best, she has alleged that she was terminated as a result of favoritism toward Concillo, who was apparently well-liked.  These possibilities undermine plaintiff's claims.  See Hussey, 933 F. Supp. 2d at 408 ("By offering her own alternative, nondiscriminatory explanations for the decision not to promote her, plaintiff wholly undermines the plausibility of her discrimination claim.");  Rolle v. Educ. Bus Transp., Inc., No. CV 11-3855, 2013 WL 783026, at *13 (E.D.N.Y. Feb. 12, 2013), report and recommendation adopted, No. 11-CV-3855, 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013) (dismissing discrimination claim when complaint "suggest[ed] that [defendant] was motivated by a personal dislike, rather than unlawful bias").

B.    Disparate Pay

Plaintiff alleges that it was because of her race that she was paid less during the first ten months of her employment with Local 926 than Maria Concillo was paid from the time of her hiring, just over one year later.  Subjecting an employee to unequal pay constitutes an adverse employment action for the purposes of the prima facie Title VII discrimination case.  Humphries v. City Univ. of New York, No. 13 CIV. 2641, 2013 WL 6196561 (S.D.N.Y. Nov. 26, 2013).  To create a plausible inference of discrimination through unequal pay at the pleading stage, a plaintiff must allege that she was paid less than a co-worker outside of her protected class and that she "was similarly situated in all material respects to the individuals with whom she seeks to

compare herself." Id., at *6 (citing Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)) (internal quotation omitted). That standard of comparison requires "a reasonably close resemblance of facts and circumstances." Id. (same). The situation of the plaintiff and her comparator must be "sufficiently similar . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001). At the pleading stage, the plaintiff's and her comparator's circumstances "must bear a reasonably close resemblance, but need not be identical." Brown, 756 F.3d at 230 (internal quotation marks omitted).

I agree with defendant that plaintiff has not stated a Title VII claim for disparate treatment as compared to any of defendant's former Office Managers, because she has not alleged that there was any period during which a former Office Manager was paid more than she was when she had comparable experience, *i.e.*, when she was similarly situated. However, plaintiff's allegations of disparate pay with respect to the $11 to $13 per hour that she was paid as a new hire and for the ensuing 10-month period, in contrast to the $17 per hour starting wage that was given to Concillo, are sufficient to meet the lenient pleading standard for a Title VII case. From the face of the SAC, there is no indication that Concillo's higher starting salary was based on any advantage with respect to her skills or experience. Nor do plaintiff's allegations suggest any other clear justification or explanation for the discrepancy in pay, such as superior negotiation by the higher-paid worker. Cf. Curcio v. Roosevelt Union Free Sch. Dist., No. 10-CV-5612, 2012 WL 3646935, at *1 n.3 (E.D.N.Y. Aug. 22, 2012) (unlike the plaintiff, the comparator had researched and negotiated her salary level at the time she was hired). I find no basis within the four corners of the SAC for holding that plaintiff and Concillo were not similarly situated.

In reply, defendant argues only that plaintiff eventually surpassed Concillo in pay when, as a result of mediation, plaintiff briefly received an Office Manager's salary of $22 per hour, while Concillo's salary remained flat until 2013. Defendant has not explained, however, why plaintiff's allegations of a 30% discrepancy in starting pay between plaintiff and Concillo do not state a *prima facie* case of actionable unequal pay during that period. While defendant will have ample opportunity to adduce evidence of non-discriminatory reasons for the discrepancy at later stages of this litigation, all that is required of plaintiff in response to the instant motion is to allege that a similarly situated co-worker who is not a member of a protected class was paid more than she was. For present purposes, she has met her burden.

## II.     Hostile Work Environment

Plaintiff includes an allegation of "Harassment" in the section of her SAC titled "Topics" and in the checkboxes provided on the Court's form Title VII pleading, where she has written this claim into the blank provided for "[o]ther acts" of actionable discrimination. I construe these references to allege the creation of a hostile work environment. An employer's conduct creates a hostile work environment under Title VII when the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation omitted). "Of course, it is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's protected characteristic." Id. (same).

Even the specific allegations of mistreatment that plaintiff places under the subject heading of "Harassment" in her pleadings, however, are individual incidents that express plaintiff's general dissatisfaction with the conditions of her employment, such as that "Sal T. told

[former Office Manager] Marcia that if either of us go on vacation before August first he would dock our pay." She offers no allegations of pervasive intimidation, ridicule, or insult. More importantly, she offers no allegation of mistreatment that was in any way related to her race. Any claim of a hostile work environment must therefore be dismissed.

**III.     Retaliation**

Retaliation is actionable under Title VII when the plaintiff "engaged in a protected activity, such as complaining about race discrimination" and, as a result, her employer took an adverse action in retaliation. See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (citing Gorzynski, 596 F.3d at 110)). Here, as with her harassment or hostile work environment claim, plaintiff has indicated through her form pleading and the "Topics" section of her SAC that she alleges retaliation, but she has set forth no facts that suggest that she engaged in any protected activity. Her retaliation claim is therefore dismissed.

## CONCLUSION

Defendant's [56] motion to dismiss is granted in part and denied in part. Defendant's motion is denied as to plaintiff's claims of unequal starting pay under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Plaintiff's remaining claims are dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**


Dated: Brooklyn, New York              _____
      November 5, 2014                       U.S.D.J.